STONITE PRODUCTS CO. *v.* MELVIN LLOYD CO.
ET AL.

No. 321.   Argued February 10, 1942.—Decided March 9, 1942.

*Messrs. A. D. Caesar* and *Charles W. Rivise* for petitioner.

*Mr. Isaac J. Silin* for respondents.

MR. JUSTICE MURPHY delivered the opinion of the Court.

The only question presented for our determination is whether § 48 of the Judicial Code (28 U. S. C. § 109) is the sole provision governing the venue of patent infringement litigation, or whether that section is supplemented

by § 52 of the Judicial Code (28 U. S. C. § 113). Section 48 gives jurisdiction of suits for patent infringement to the United States district courts in the district of which the defendant is an inhabitant, or in any district in which the defendant shall have committed acts of infringement and have a regular and established place of business. Section 52 permits suits, not of a local nature, against two or more defendants, residing in different judicial districts within the same state, to be brought in either district.[1]

Petitioner, Stonite Products Company, an inhabitant of the Eastern District of Pennsylvania without a regular

---

[1] Section 48 provides:

"In suits brought for the infringement of letters patent the district courts of the United States shall have jurisdiction, in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant, whether a person, partnership, or corporation, shall have committed acts of infringement and have a regular and established place of business. If such suit is brought in a district of which the defendant is not an inhabitant, but in which such defendant has a regular and established place of business, service of process, summons, or subpoena upon the defendant may be made by service upon the agent or agents engaged in conducting such business in the district in which suit is brought."

Section 52 provides:

"When a State contains more than one district, every suit not of a local nature, in the district court thereof, against a single defendant, inhabitant of such State, must be brought in the district where he resides; but if there are two or more defendants, residing in different districts of the State, it may be brought in either district, and a duplicate writ may be issued against the defendants, directed to the marshal of any other district in which any defendant resides. The clerk issuing the duplicate writ shall indorse thereon that it is a true copy of a writ sued out of the court of the proper district; and such original and duplicate writs, when executed and returned into the office from which they issue, shall constitute and be proceeded on as one suit; and upon any judgment or decree rendered therein, execution may be issued, directed to the marshal of any district in the same State."

and established place of business in the Western District of that State, was sued jointly with Lowe Supply Company, an inhabitant of the Western District, in the Western District for infringement of Patent No. 1,777,759 for a boiler stand. Petitioner was served with process in the Eastern District, entered a special appearance in the action in the Western District, and moved to dismiss or quash the return of service because venue was laid in the wrong district. The district court granted the motion and dismissed the cause as to petitioner.[2] 36 F. Supp. 29 The Circuit Court of Appeals reversed. 119 F. 2d 883. We granted certiorari because of an asserted conflict with *Motoshaver, Inc.* v. *Schick Dry Shaver, Inc.,* 100 F. 2d 236 (C. C. A. 9).

We hold that § 48 is the exclusive provision controlling venue in patent infringement proceedings.

Section 48 is derived from the Act of March 3, 1897, c. 395, 29 Stat. 695, and its scope can best be determined from an examination of the reasons for its enactment.

Section 11 of the Judiciary Act of September 24, 1789, c. 20, 1 Stat. 79, permitted civil suits to be brought in the federal courts against a person only in the district of which he was an inhabitant or in which he was found at the time of serving the writ. That section applied to suits for patent infringement. *Chaffee* v. *Hayward,* 20 How. 208, 216; *Allen* v. *Blunt,* 1 Blatchf. 408, Fed. Cas. No. 215. The Act of March 3, 1875, c. 137, 18 Stat. 470, retained the provision allowing suit wherever the defendant could be found. The abuses engendered by this extensive venue prompted the Act of March 3, 1887, c. 373, 24 Stat. 552, which, as amended by the Act of August 13, 1888, c. 866, 25 Stat. 433, permitted civil suits to be instituted only in the district of which the defendant was an inhabitant, except

---

[2] Lowe Supply Company defaulted and the suit proceeded to judgment against it.

that in diversity jurisdiction cases suit could be started in the district of the plaintiff's or the defendant's residence. The substance of those provisions was reënacted as § 51 of the Judicial Code (28 U. S. C. § 112).

After the holding of *In re Hohorst,* 150 U. S. 653, that the Act of 1887 as amended did not apply to a suit against an alien or a foreign corporation, "especially in a suit for the infringement of a patent right," the lower federal courts became uncertain as to the applicability of the Act of 1887 to patent infringement proceedings.[3] In explanation of *Hohorst's* case, it was said in *In re Keasbey & Mattison Co.,* 160 U. S. 221, 230, that "It was a suit for infringement of a patent right, exclusive jurisdiction of which had been granted to the Circuit Courts of the United States . . .; and was therefore not affected by general provisions regulating the jurisdiction of the courts of the United States, concurrent with that of the several States." Thereafter the lower federal courts, for the most part, took the position that the Act of 1887 as amended did

---

[3] Prior to the Hohorst case the lower federal courts seem to have been unanimous in assuming that the Act of 1887 as amended governed patent infringement litigation. See *Reinstadler* v. *Reeves,* 33 F. 308; *Miller-Magee Co.* v. *Carpenter,* 34 F. 433; *Halstead* v. *Manning, Bowman & Co.,* 34 F. 565; *Gormully & Jeffrey Mfg. Co.* v. *Pope Mfg. Co.,* 34 F. 818; *Preston* v. *Fire-Extinguisher Mfg. Co.,* 36 F. 721; *Adriance, Platt & Co.* v. *McCormick Harvesting Mach. Co.,* 55 F. 287; *National Typewriter Co.* v. *Pope Mfg. Co.,* 56 F. 849; *Bicycle Stepladder Co.* v. *Gordon,* 57 F. 529; *Cramer* v. *Singer Mfg. Co.,* 59 F. 74.

After the Hohorst decision conflict developed. *Union Switch & Signal Co.* v. *Hall Signal Co.,* 65 F. 625, relying on *Galveston, H. & S. A. Ry. Co.* v. *Gonzales,* 151 U. S. 496, interpreted *In re Hohorst* as limited to infringement suits against aliens or foreign corporations. Accord, *Donnelly* v. *United States Cordage Co.,* 66 F. 613. Contra, *Smith* v. *Sargent Mfg. Co.,* 67 F. 801.

not apply to suits for patent infringement, and that infringers could be sued wherever they could be found.[4]

The Act of 1897 was adopted to define the exact jurisdiction of the federal courts in actions to enforce patent rights, and thus eliminate the uncertainty produced by the conflicting decisions on the applicability of the Act of 1887, as amended, to such litigation.[5] That purpose indicates

---

[4] *National Button Works* v. *Wade,* 72 F. 298; *Noonan* v. *Chester Park Athletic Club Co.,* 75 F. 334; *Earl* v. *Southern Pacific Co.,* 75 F. 609; *Westinghouse Air-Brake Co.* v. *Great Northern Ry. Co.,* 88 F. 258. Contra, *Gorham Mfg. Co.* v. *Watson,* 74 F. 418.

[5] See H. Rept. No. 2905, 54th Cong., 2d Sess.

The remarks of Mr. Mitchell who reported the bill for the House Committee on Patents are significant (29 Cong. Rec. 1900–1901):

"Mr. Speaker, the necessity for this law grows out of the acts of 1887 and 1888 which amended the judiciary act. Conflicting decisions have even arisen in the different districts in the same States as to the construction of these acts of 1887 and 1888, and there is great uncertainty throughout the country as to whether or not the act of 1887 as amended by the act of 1888 applied to patent cases at all.

"The bill is intended to remove this uncertainty and to define the exact jurisdiction of the circuit courts in these matters.

"The committee have been extremely careful in the investigation of the matter before reporting the bill.

"As the bill was referred to me, I wrote to a great many patent lawyers in different parts of the country, in order to get their views and objections, if any, and I find that they are all unanimously in favor of the bill as it is now reported, and state that it would tend not only to define the jurisdiction of the circuit courts not now defined, but also limit that jurisdiction and so clearly define it that in the future there will be no question with regard to the application of the acts of 1887 and 1888.

. . . . .

". . . The trouble has arisen in this matter that under the act of 1888 some of the courts were uncertain whether or not the law did or did not apply to patent cases, and therefore this special bill relating to patents solely has been brought up because of the indefiniteness and uncertainty arising from different constructions of the act of 1888 as applied to patent cases."

that Congress did not intend the Act of 1897 to dovetail with the general provisions relating to the venue of civil suits, but rather that it alone should control venue in patent infringement proceedings.

Section 52 is derived from R. S. § 740, which in turn stems from the Act of May 4, 1858, c. 27, 11 Stat. 272, a general act intended to do away with the insertion of special provisions preserving statewide venue in acts dividing a state into two or more judicial districts,[6] and the Act of February 24, 1863, c. 54 § 9, 12 Stat. 662. Respondents insist that § 52 applies to patent infringement suits because it antedates § 48, excludes from its purview only suits of a local nature, and is consistent with and complementary to § 48, since it deals with the problem of venue in the geographical sense rather than in terms of specified classes of litigation. We cannot agree.

Even assuming that R. S. § 740 covered patent litigation prior to the Act of 1897, we do not think that its application survived that act, which was intended to define the exact limits of venue in patent infringement suits.[7] Furthermore, the Act of 1897 was a restrictive measure, limiting a prior, broader venue. *General Electric Co.* v.

---

[6] See the remarks of Senator Pugh who reported the bill for the Senate Judiciary Committee. 36 Cong. Globe 936, 35th Cong., 1st Sess.

[7] As a matter of fact there was some uncertainty as to whether R. S. § 740 survived the general venue provisions of the Acts of 1875 and 1887. See *Greeley* v. *Lowe*, 155 U. S. 58, 72; *Petri* v. *Creelman Lumber Co.*, 199 U. S. 487, 497; *Camp* v. *Gress*, 250 U. S. 308, 315. It was held that it did in *East Tennessee, V. & G. R. Co.* v. *Atlanta & F. R. Co.*, 49 F. 608; *Goddard* v. *Mailler*, 80 F. 422; and *Doscher* v. *United States Pipe Line Co.*, 185 F. 959. But compare *New Jersey Steel & Iron Co.* v. *Chormann*, 105 F. 532, and *Seybert* v. *Shamokin & Mt. C. Electric Ry. Co.*, 110 F. 810.

*Marvel Co.*, 287 U. S. 430, 434–435; *Bowers* v. *Atlantic, G. & P. Co.*, 104 F. 887; *Cheatham Electric Switching Co.* v. *Transit Co.*, 191 F. 727.[8] Thus there is little reason to assume that Congress intended to authorize suits in districts other than those mentioned in that Act.

The reënactment of the Act of 1897 as § 48, and of R. S. § 740 as § 52 of the Judicial Code, by the Act of March 3, 1911, c. 231, 36 Stat. 1100–1101, is not indicative of any Congressional understanding that the two sections are complementary. Quite the contrary, for § 52 appears in the Judicial Code as an exception to § 51, the general venue provision derived from the Act of 1887, as amended. See *Camp* v. *Gress*, 250 U. S. 308, 315. Section 51 is, of course, not applicable to patent infringement proceedings. *General Electric Co.* v. *Marvel Co., supra.*[9] Since § 48 is wholly independent of § 51, there is an element of incongruity in attempting to supplement § 48 by resort to § 52, an exception to the provisions of § 51. Cf. *Connecticut Fire Ins. Co.* v. *Lake Transfer Corp.*, 74 F. 2d 258.

*Reversed.*

---

[8] *Zell* v. *Erie Bronze Co.*, 273 F. 833, is to the contrary, but apparently overlooks the trend of the lower federal courts after *In re Keasbey & Mattison*, 160 U. S. 221, was decided. See note 4, *ante.*

[9] This is apparent from the legislative history of the Act of 1897 from which § 48 is derived. See note 5, *ante.*

Section 51 is likewise inapplicable to suits for copyright infringement. *Lumiere* v. *Wilder, Inc.*, 261 U. S. 174.